CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 21 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NEIL HUNDLEY PETERS, JR, ) | |
| Plaintiff, ) | Civil Action No. 7:06-cv-00595 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| BLUE RIDGE REGIONAL JAIL, et. al., ) | By: Hon. James C. Turk |
| Defendant(s). ) | Senior United States District Judge |

Plaintiff Neil Hundley Peters, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Peters alleges that while he was housed at a facility operated by the Blue Ridge Regional Jail (the BRRJ) from February to October 2004,[1] jail officials violated his constitutional rights by segregating him from the general population because he was a diabetic, denying him recreation for one month, disclosing his personal medical information, harassing and defaming him, and assaulting him. The court filed the complaint conditionally and directed plaintiff to amend to provide more specific details, including dates on which these events occurred, and to name proper defendants subject to suit under § 1983. Plaintiff has submitted an amendment, which the court will grant. Upon consideration of the complaint as amended, however, the court finds that this action should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

---

[1] In his original complaint, Peters alleges that his claims concern events that occurred between February and October 2006. From his later submissions, it is clear that 2006 was an error and that the alleged violations occurred in 2004.

1

I.

Peters alleges the following sequence of facts from which his claims arise. During his incarcerated at the BRRJ from February 26, 2004 to October 8, 2004,[2] he was housed in the isolation ward on isolation status for a total of 276 days because he is a diabetic who had a piece of cake while housed in general population. Peters admits that he is insulin-dependant, requiring three to four shots of insulin per day, and that his blood sugar sometimes measured in the high range.[3] Officials referred to him as a "management problem" and assigned him to isolation(or closely guarded him when he was in the general population) in order to prevent him from obtaining sweets or other foods not compatible with his condition. Officers confiscated items Peters had purchased at the commissary after his blood sugar was higher than normal and never reimbursed him for the items taken. They put a limit for medical reasons on the commissary items he could purchase. Other diabetics at the jail and in state facilities are housed in the general population and are not required to eat only a diabetic diet.

For most of his stay at the BRRJ, Peters was allowed only one hour of recreation per day with the protective custody inmates. For one month (July 29 to August 18, 2004), he was not allowed recreation at all. Officers placed signs on his door, stating: "No recreation allowed for this inmate" and "Do not give any food to this inmate or you will be charged." All of these actions were taken to prevent Peters from getting sweets from other inmates. Officers would tease him by showing him

---

[2] Peters also says that he was segregated from the population for 276 days because of his diabetes. He states that as of September 5, 2004, he had been in segregated housing for over six months, but on July 28, 2004, he had been segregated for over seven months.

[3] Peters claims that his blood sugar was high because he was given an incorrect amount of insulin.

2

candy bars and giving out extra trays of food to other inmates. Officers falsely informed other inmates that Peters was a severe diabetic, on the verge of death, and one officer falsely told someone that Peters had "the infection."

At one point, officers found out that Peters was sending money home to family members. They then forced Peters to purchase six to seven months' worth of medications, including insulin (which according to Peters, has a three-month shelf-life). Peters believes that all of these purchases were unnecessary, particularly because he would soon be transferred to the Virginia Department of Corrections (VDOC) prison system. In fact, Peters did not use all of the insulin and medications that he was forced to purchase at the BRRJ. Peters also claims that medical staff at BRRJ put false information in his medical records: that he was manipulative and liked to squirt insulin out of a syringe.

Peters alleges that he was assaulted on two occasions by jail officials. On August 24, 2004, an officer who was escorting Peters back to his cell after a doctor visit suddenly pushed Peters and told him, "You'd better get back to your cell or I'll drag you back and it won't be pretty." On August 13, 2004, Peters asked two different officers to allow him to see a sergeant or lieutenant. The officers refused. Then, a sergeant, a lieutenant, a guard and a male nurse came up to Peters, picked him up and tried to drag him back to his cell. The nurse kept hitting his hand. In the scuffle, Peters' pinky finger became dislocated. Peters tried to file criminal charges on these officers, but the magistrate refused his complaint.

When Peters asked to be transferred back to the general population, officials told him that because of his behavior toward other inmates and staff, he had made himself a management problem and would stay segregated until officials had seen consistent behavior changes and indications that

3

he would be cooperative. Officials reviewed Peters' segregation status every sixty to ninety days, but repeatedly kept him in that status based on "non-compliance of diet."

Based on these allegations, Peters wishes to sue officers at the BRRJ for: deliberate indifference, "invidious discrimination (medical)," harassment, embarrassment, humiliation, libel/slander/defamation, assault, violations of Fifth, Eighth and Fourteenth Amendment rights, unethical conduct by medical and administrative staff, forced purchase of excessive amounts of insulin, cruel and unusual punishment, mental and emotional stress, violations under the Americans with Disabilities Act, implementing a "temporary policy" against him, and refusal to reimburse money he spent on insulin and confiscated commissary items. Peters says that he suffered from stress and had to take sedatives as a result of his segregated confinement.

II.

No federal statute of limitations applies in § 1983 actions. Wilson v. Garcia, 471 U.S. 261, 266 (1985). Accordingly, §1983 actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. Owens v. Okure, 488 U.S. 235, 239-40 (1989). Because the ADA does not include a statute of limitations, it also borrows the statute of limitations for personal injury actions in the forum state, unless the state law conflicts with federal law or policy. See 42 U.S.C. § 1988; Hardin v. Straub, 490 U.S. 536, 539 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. § 8.01-243(a). Under these principles, a plaintiff bringing a civil rights action under § 1983 in Virginia must do so within two years from the time when his action accrues. Id.

The time of accrual of a cause of action under § 1983 is a federal question. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). In Nasim, the United

4

States Court of Appeals for the Fourth Circuit held that a cause of action under §1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. An inmate's § 1983 action is commenced for purposes of the statute of limitations as soon as he delivers his complaint to prison authorities for mailing. Lewis v. Richmond City Police Depot, 947 F.2d 733 (4th Cir. 1991). In Virginia § 1983 cases, then, if an inmate has not delivered his complaint to prison officials for mailing within the two-year period following the time when he knew or had reason to know of his alleged injury, that inmate is barred by the Virginia statute of limitations from bringing suit.

According to Peters' complaint as amended, all of the events from which his claims arose occurred between February 26 and October 8, 2004. As he clearly knew within that time period all the facts necessary to bring his claims, the claims also accrued then. For purposes of this opinion, the court will presume that Peters mailed his complaint on September 29 2006, the date on which he signed and dated the complaint.[4] So saying, the court finds that all claims concerning events on or before September 28, 2004, are barred by the statutory limitation period set forth in Va. Code Ann. 8.01-243(a), because Peters did not file the claims within two years of accrual. Clearly, the excessive force claims concerning events in August and September 2004 are barred. Moreover, because he failed to comply with the court's order to provide specific dates for other claims, such as his allegations of harassment and defamation, the court will also dismiss these claims for failure to allege facts indicating that the claims are timely filed. During the nine-day period from September 28 to October 8, 2004, Peters apparently continued to be administratively segregated from the general population because of his past failures to comply with his diabetic diet and his unstable

---

[4]The court received Peters' complaint on October 5, 2006.

5

blood sugar levels. His claims regarding his segregation accrued long before September 28, 2004, however, since he knew the facts necessary to bring such claims much earlier. Thus, the court concludes that all of Peters' claims under § 1983 and the ADA are barred by the statute of limitations.

As the court has determined that the statute of limitations unquestionably provides an affirmative defense to this civil action, the court may summarily dismiss the complaint as frivolous, pursuant to § 1915A(b)(1). See Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983) (finding under former version of §1915 that court may summarily dismiss based on affirmative defense). Plaintiff's factual contentions clearly are clearly no longer actionable under § 1983 and must be dismissed, pursuant to §1915A(b)(1), as legally frivolous.

In any event, Peters' allegations fail to state any claims actionable under § 1983 or the ADA. BRRJ officials clearly did not segregate Peters because of his diabetes, but because of his unstable blood sugar levels and past incidents of his failure to comply with his medically prescribed diet. Thus, he fails to state a prima facie case under the ADA. See 42 U.S.C. § 12132 (stating that no qualified individual with disability shall be excluded from the benefits, services or programs of a public entity "by reason of" his disability). For the same reason, Peters has no Fourteenth Amendment equal protection claim under § 1983. His own allegations clearly indicate that he was not similarly situated to other diabetics, who did not have severely unstable blood sugar levels, and that officials' decision to segregate him was rationally related to a legitimate prison interest in maintaining his health. See Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001) (finding that prison officials may treat similarly situated inmates differently if they have rational basis for doing so). Defamation and verbal harassment do not give rise to § 1983 claims absent circumstances not

alleged here. See Paul v. Davis, 424 U.S. 693 (1976); Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Since Peters does not allege suffering more than de minimis injuries as a result of the alleged assaults, these claims also fail to rise to constitutional proportions and are not actionable under § 1983. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc). Because the allocation of the cost of inmates' medical care is a matter of state law, Peters has no § 1983 regarding officials' requirement that he purchase his own medications and insulin. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 245 (1983). Because Peters' claims are either legally frivolous because they are time barred or fail to state any actionable federal claim or both, the court will dismiss his entire action without prejudice, pursuant to § 1915A. An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This ___ day of December, 2006.

/s/ James C. Turk
Senior United States District Judge

7